**HILTON HOTELS CORPORATION t/a Statler Hilton Hotel and Hilton-Uris, Inc. t/a Washington Hilton Hotel, Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent, Presidential Owners, Inc., Intervenor.**

**No. 8258.**

District of Columbia Court of Appeals.

Argued Oct. 15, 1975.

Decided Sept. 30, 1976.

Whayne S. Quin, Washington, D. C., with whom Norman M. Glasgow, Allen Jones, Jr., and Michael B. McGovern, Washington, D. C., were on the brief, for petitioners.

E. Calvin Golumbic, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent. Earl A. Gershenow, Asst. Corp. Counsel, Washington, D. C., also entered an appearance for respondent.

Philip L. Cohan, Washington, D. C., with whom David G. Bress, Washington, D. C., was on the brief, for intervenor.

Before REILLY, Chief Judge, and KERN, Associate Judge, and HYDE, Associate Judge, Superior Court of the District of Columbia.*

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

KERN, Associate Judge:

Petitioners ask us to overturn an order by the Board of Zoning Adjustment (Board) reversing a decision by the Zoning Administrator (Administrator) which had permitted the Statler Hilton's laundry plant to serve the Washington Hilton Hotel as well.

█ The record contains ample evidence supporting the Board's findings, among others, that (1) the Statler Hilton is located partly within an SP Zoning district and partly within a C–4 Zoning district, (2) the Statler Hilton contains a laundry facility which was originally used solely for processing its own laundry but since sometime in 1969 has been used to process the laundry of the Washington Hilton, which is located about a mile away, (3) Presidential Owners, Inc. (Presidential), appealing the Administrator's ruling, is the owner of the cooperative apartment house directly across 16th Street from the Statler Hilton at the corner of L Street, and (4) "frequent deliveries of laundry" to and from the Statler Hilton resulted in traffic congestion and the impeding of pedestrians on L Street.[1]

█ The Board concluded that the Zoning Regulations permit a hotel in an SP District to operate a laundry on its premises since the laundry constitutes an "accessory use" of the hotel property as that term is defined, *viz.,* "use customarily incidental and subordinate to the principal use *and located on the same lot therewith."* (Emphasis added.) The Board further concluded, however, that the laundry on the premises of the Statler Hilton does not constitute "an accessory use" insofar as the Washington Hilton Hotel is concerned since obviously the laundry is not on that hotel's lot, and hence the current use of the Statler Hilton's laundry plant for the Washington Hilton is improper under the Zoning Regulations.[2] The conclusion drawn by the Board in our view follows as a matter of law from its findings, and hence must be upheld although we well might have reached a different result were we to have considered the case de novo. *See Stewart v. District of Columbia Board of Zoning Adjustment,* D.C.App., 305 A.2d 516 (1973).

█ Petitioners also urge us to invalidate the Board's order on procedural grounds. This contention necessitates a recitation of the convoluted course this controversy has followed since it commenced in late 1969. Then, Presidential complained by letter to the Zoning Administrator regarding increased truck traffic by reason of the Statler Hilton processing

---

1. An officer of the Laundry-Dry Cleaning Association of Greater Washington (Association) had testified at the first hearing that he inspected the laundry operation at the Statler Hilton and estimated (a) that its laundry plant "would do in excess of four and a half million pounds a year" of laundry for the Washington Hilton, (b) that the operation required "truckloads of at least four a day" from one hotel to the other, and (c) that "it would take at least an hour to unload" each truck. The Presidential's caretaker for 12 years testified at the second hearing that he walked almost daily from the apartment on L Street past the Statler Hilton and frequently noticed a laundry truck "is sticking out past the sidewalk," forcing him to walk in the street. A member of the Board of Presidential, a cooperative apartment, testified "the sidewalk [on L Street next to the hotel] is obstructed and we can't walk by on account of

the trucks." We are satisfied that Presidential, given its geographical location *vis a vis* the Statler Hilton and the testimony described above, had standing to complain about the hotel's laundry practices.

2. Petitioners' reliance on *City of Miami Beach v. Stearns,* 77 So.2d 626 (Fla.Sup.Ct. 1955) is misplaced. The applicable regulation there defined "accessory uses" as "uses customarily incident to the principal uses as permitted, but not including any commercial activity." In the absence of any restriction that the accessory use be *on the same lot* as the instant case before us, the Florida Supreme Court could properly conclude there that the laundry plant in one of two hotels under common ownership could do the laundry of the *other* hotel without violating the Florida regulation.

the Washington Hilton's laundry and received on January 12, 1970, an "opinion" that "the performance of this service . . . does not constitute a violation of the D.C. Zoning Regulations." Presidential and the Laundry-Dry Cleaning Association of Greater Washington (Association), both represented by the same attorney, filed with the Board a printed form denominated "Application of Appeal," which triggered a hearing before the Board on March 18, 1970. Then, before any testimony was presented, counsel for the Hotel petitioners challenged the standing of the appellants. The ground asserted was that neither Association nor Presidential was an "aggrieved party" within the meaning of the Regulations and hence the Board lacked jurisdiction to entertain and determine their appeal from the Administrator's January 12th opinion that the Statler Hilton was not violating the Zoning Regulations by cleaning the soiled linen of the Washington Hilton.

Thereupon, the Board heard testimony (1) by the Administrator as to the layout of the laundry and the arrangement between the two hotels and (2) by the Association's Executive Vice-President as to the physical size of the laundry plant, the volume of laundry done there, the number truck deliveries per day to the Statler Hilton transporting the Washington Hilton wash and the method of unloading it at the Statler Hilton delivery docks. The attorney for Association and Presidential then took the position before the Board that the hotel's laundry had become a commercial enterprise, thereby "aggrieving" Association, and that the hotel laundry increased congestion on 16th Street and "expand[ed] an activity which is not appropriate for the area," thereby "aggrieving" Presidential.

On June 11, 1970, the Board ordered the appeal from the Administrator's decision "dismissed" upon (1) a "finding" that "[T]he owners of this apartment [the Presidential] are not an appellant in this case" and (2) the "opinion" that "one who

is affected only economically by a use is not a 'person aggrieved' . . . as that phase [sic] is used in the statute [and] [a]ccordingly, appellant's organization is not authorized to bring this appeal." The order of dismissal was entered by the Board on June 26, 1970 and served upon the attorney of Presidential and Association on July 1, 1970; he filed with the Board on July 6th a letter asserting "as obviously wrong" the finding that Presidential was not an appellant (pointing to the Application for Appeal form that had been earlier filed in the name of *both* Association and Presidential) and requesting that "the Board correct the error and, on the basis of the reasoning in the Opinion, enter an amended Order reversing the Administrator's decision."

On November 24, 1970, without further hearing, the Board—two members dissenting—entered a "Supplemental Order" (1) adopting by reference the findings contained in its June 11th order which had been entered on June 26th, (2) making an additional finding, *viz., "Appellant,* Presidential Owners, Inc., is the corporate owner of the cooperative apartment house located at the southeast corner of 16th and L Street, N.W., which is directly across 16th Street from the subject property," and (3) *reversing* the Administrator's decision.

Petitioners protested the Board's action and, on December 22, 1970, the Board by its Administrative Office advised them:

In its original Order of June 11, 1970, the Board failed to note at that time that Presidential . . . was also a party appellant.

This omission by the Board was called at [sic] its attention . . . by letter dated July 2, 1970.

The Board there upon [sic] considered the appeal on its merit as an appeal brought by . . . Presidential . . . and decided that the laundry for the Washington Hilton Hotel could not be done by the Statler Hilton Hotel.

Petitioners thereafter filed in the United States District Court here a Petition for Review and Complaint for Mandatory Injunction asking the Court (a) to compel the Board to "cancel, withdraw and expunge" its November 24th Order, which had reversed the Administrator's opinion upholding the hotels' laundry operation, and (b) to enjoin the Board from altering or modifying its June 11th order, which had dismissed the appeal from the Administrator's opinion filed by Association and Presidential.

On July 10, 1973, the District Court in a Memorandum and Order granted summary judgment in favor of petitioners and declared the Board's November 24th order "unlawful, illegal, null and void because not issued in accord with due process of law" and ordered the proceeding remanded to the Board "for any further proceedings which it may conduct in accordance with due process of law and this memorandum and order."

Thereupon, the Board advised that it would schedule the case "for a new hearing on September 19, 1973." The Board finally held that hearing on December 17, 1973, at which time petitioners' counsel announced, "We will not participate." Thereupon, the Board's Chairman announced that it had considered the matter after consultation with its counsel and determined that the hearing would "be a de novo hearing." The attorney for Presidential then announced that Association was abandoning its appeal from the Administrator's Order. Thereafter, testimony was presented and exhibits were received in evidence (including exhibits received at the 1970 hearing) and the Board subsequently entered the Order which is the subject of the instant petition for review.

In essence petitioners' procedural argument is that every action taken by the Board in this case from the date in 1970 it "dismissed" the appeal by Association and Presidential from the Administrator's opinion that the hotels were *not* violating the Zoning Regulations until entry of the order presently challenged is null and void and only the Administrator's opinion of January 12, 1970 is in effect. We disagree. The Board's dismissal of Presidential's appeal in 1970 was erroneous on its face because it rested entirely on a mistake of fact, *viz.*, the owners of the Presidential apartment had not been an appellant. There is in the record a printed form "Application of Appeal" containing in the appropriate space for appellants, the name Presidential Owners, Inc., which is the owner of the apartment and whose board of directors had originally complained to the Administrator concerning the Hotel's increased laundry use. Since Presidential promptly called the attention of the Board to its error (within ten days from the time of receiving the June 11th order) and the Board subsequently conceded it had "failed to note . . . Presidential was also a party appellant," we are unable to conclude that the District Court's Memorandum and Order was intended to uphold the Board's dismissal of the appeal from the Administrator's opinion on the ground that Presidential was not an appellant. Rather the District Court, and properly we believe, struck down the Board's subsequent action attempting to correct its error because such action was taken without proper notice to the parties and accomplished in an ambiguous fashion. Thereafter, in December 1973, it seems to us the Board acted in full accord with the District Court's order when it scheduled a "de novo" hearing on the appeal. In this way all interested parties were afforded full opportunity to marshal evidence and present argument on the issue not only whether the Statler Hilton's laundering of the Washington Hilton linens was an accessory use and permissible under the Zoning Regulations, but also whether Presidential was aggrieved and had standing to proceed through the de novo proceeding. That petitioners chose not to participate in this proceeding is not a reason for us to declare that the hearing

was a nullity and the order now before us, invalid.

In sum, the Board's decision of the issues was based on the evidence and in conformity with the applicable Zoning Regulation and issued only after a full hearing at which all interested parties had opportunity to be heard. Accordingly, the Board's order must be and is

*Affirmed.*