**JAMESON'S LIQUORS, INCORPORATED, Petitioner,**

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent.**

**No. 11176.**

District of Columbia Court of Appeals.

Argued Oct. 11, 1977.

Decided March 1, 1978.

---

Murray A. Kivitz, Washington, D. C., for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, and E. Calvin Golumbic, Asst. Corp. Counsel, Washington, D. C., were on brief, for respondent.

Before NEWMAN, Chief Judge, and NEBEKER and FERREN, Associate Judges.

FERREN, Associate Judge:

Petitioner Jameson's Liquors, Incorporated, seeks reversal of the Alcoholic Beverage Control Board's order denying petitioner's application to transfer its Retailer's Class "A" liquor license from 2818–14th Street, N.W. to premises located at 2600–14th Street, N.W. Because the Board's Supplementary Conclusions of Law are "unsupported by substantial evidence in the record of the proceedings before the court," D.C. Code 1977 Supp., § 1–1510(3)(E), we set aside the Board's order. In addition, because this court has twice remanded this matter to the Board, we hold that considerations of equity compel us to remand the case with an order to show cause why petitioner's application should not be granted forthwith.

## I.

On January 31, 1976, petitioner ceased operating its retail liquor store, license Class "A", at 2818–14th Street, N.W., where petitioner had operated for 24 years. One month later, on February 26, 1976, petitioner applied to the Board for a transfer of its license to premises located at 2600–14th Street, N.W., a block and a half away.[1]

Petitioner's only shareholders, Sidney and Bernice Drazin, had leased the new premises, where a gasoline service station was located, from Amoco Oil Company. The Drazins also had entered into a contract to purchase the property, contingent upon their agreement to sell Amoco gasoline there for a period of fifteen years. The Drazins then entered into an agreement to lease approximately half the property to petitioner for ten years, contingent upon the Drazins' completing the purchase and upon petitioner's obtaining the requested transfer of the Class "A" license to the new location.

In furtherance of their plan, the Drazins engaged an architect to prepare drawings indicating how the property—which measured approximately 145 feet by 112 feet—was to be divided, including a substantial buffer of shrubbery between the liquor store and the gasoline station. As part of the arrangement, petitioner was to take over and remodel the service station for use as the liquor store. The Drazins planned to build a new structure on the other half of the property to serve as a "gas-and-go" operation, open twenty-four hours a day, in keeping with their obligation to Amoco. (In doing so they would eliminate the existing auto-repair service.) Finally, the Drazins planned to lease the "gas-and-go" facility to a separate corporation operated by their son and daughter, ages nineteen and twenty-two, respectively, who were to assume full responsibility for that business (although they lived at home with their parents).

A number of residents and groups in the surrounding community protested the application for transfer. The Board's hearing, originally scheduled for March 25, 1976, was accordingly rescheduled; it took place on April 5, 1976. The Board issued an order on July 22, 1976, denying petitioner's application on the ground that "[t]he premises do not qualify as appropriate" pursuant to D.C.Code 1973, § 25–115(a)6. In support of this determination, the Board issued find-

---

1. Petitioner had been forced to move because its property had been acquired by the D.C. Redevelopment Land Agency for public use. Petitioner conceded at oral argument that this equitable consideration should not be factored into the Board's decision except in a "close case." We do not reach this issue; we analyze the proposed license transfer as though eminent domain had not been involved.

ings of fact which, to the extent relevant here, (1) recited the proposed arrangement involving Amoco, the Drazins, their children, and petitioner, but found no evidence that Amoco had yet agreed to sell the property or that the Amoco lease would permit the sale of liquor; (2) stated the number, and in some cases the names, of witnesses pro and con; and (3) reported the opposition's arguments that the proposed transfer would have a "deteriorating effect on the neighborhood" because it would "create a 'drink and drive' atmosphere that would be detrimental to the driving student from Cardozo [High School]," would "adversely affect the Seventh Day Pentacostal Church and the proposed Tot Center," and would impact on an area "already over saturated with retail establishments."

Petitioner applied to the Board for reconsideration and/or rehearing. On July 26, 1976, the Board denied the petition on the ground that it was defective as to form. The Board would not consent to petitioner's offer to correct the defect, whereupon petitioner sought review in this court on September 27, 1976. D.C.Code 1977 Supp., § 1–1510; D.C.App.R. 15.

A month later, on October 27, 1976, the Board itself filed a motion to remand the proceeding; the Board had decided that it would permit the filing of a petition for reconsideration and/or rehearing. On November 1, 1976, we granted the motion. Petitioner then filed the anticipated petition, but on December 15, 1976, the Board denied it, thereby reactivating the petition for review by this court. The Board sought and received several extensions of time to file its brief in opposition. Then, on February 3, 1977, the Board filed another motion to remand the proceeding to the Board, this time "so that respondent may make supplemental findings of fact and conclusions of law." In support of its motion, the Board admitted that

1. . . . respondent's findings of fact are conclusory in nature and do not conform to the requirements of the District of Columbia Administrative Procedure Act. . . .

2. There is a substantial question as to whether respondent's findings of fact and conclusions of law are adequate to permit meaningful judicial review in regard to petitioner's other arguments. *Hill v. District Unemployment Compensation Board,* D.C.App., 279 A.2d 501 (1971).

Our court granted the motion on April 4, 1977. A month later, on May 4, 1977, the Board entered Supplemental Findings of Fact, Conclusions of Law, and Order— again denying petitioner's application for transfer.

In its brief, the Board acknowledges that "[t]he Findings and Conclusions which now support the order are very much different from" the original ones. More particularly, the Board found that "[t]he lease agreement between Sidney and Bernice Drazin and the Amoco Oil Company is no longer a basis for denying the transfer application"; but the Board denied petitioner's application by virtue of the following Supplementary Conclusions:

2. The premises do not qualify as appropriate for issuance of a retailer license Class "A" under Section 14(a)(6) of the Act (D.C.Code, 1973, § 25–115(a)(6)). The liquor business would be directly adjacent to a gasoline retail outlet, that would be a continuation of the business now being operated from the building the applicant would use for its retail liquor sales if the transfer application were granted. There would be a close relationship, both business and personal, between the operators of the liquor business (Sidney and Bernice Drazin) and the operators of the gasoline business (their son and daughter). The son and daughter would continue a business now run by their parents; they would lease from their parents; and they would have to operate the business in accordance with a contract entered between Amoco Oil Company and their parents.

The close physical proximity of the businesses, the close business and personal relationships between operators of the two businesses, and the undoubted identi-

fication in the minds of existing customers of the gasoline service station business with the structure that would house the liquor business are all very likely to combine in creating the 'drink and drive' atmosphere complained of by several protestants. Violations of D.C.Code, 1973, § 25–138, which prohibits consumption of alcoholic beverages in an automobile, would be encouraged under those circumstances. It is well known that purchasers of gasoline, who many times have no thought of buying soft drinks when they enter a service station, often do so merely because of the presence of a soft drink machine at the service station. A presence of alcoholic beverages near a gasoline station, in the circumstances of this case, is likely to create a similar phenomenon in regard to those beverages. The premises are therefore deemed inappropriate.

## II.

Both petitioner and the Board agree that the statutory provision at issue is D.C.Code 1973, § 25–115(a)6, which provides:

> (a) . . . Before a license is issued the Board shall satisfy itself:
>
> \* \* \* \* \* \*
>
> 6. That the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired.[2]

Unlike some of the other, quite specific criteria prescribed by regulations governing issuance of a liquor license,[3] the criteria in § 25–115(a)6 require application of the Board's expert judgment based on facts adduced at the hearing. Petitioner does not challenge the validity of the criteria set forth in § 25–115(a)6 or the Board's expertise and authority to apply them. Nor does

petitioner question that the Board lawfully *could* conclude (under circumstances not present here) that a retail liquor license on premises connected with a gasoline station would create a "drink-and-drive" atmosphere that is not "appropriate" for a liquor license within the meaning of § 25–115(a)6. Petitioner, in other words, does not argue for *per se* invalidity of the "drink-and-drive" criterion.

Petitioner accordingly limits its challenge to three, essentially factual contentions. First, petitioner claims that the Board did not serve notice that it might apply a "drink-and-drive" criterion under § 25–115(a)6. *See Palace Restaurant, Inc. v. Alcoholic Bev. Cont. Bd.,* D.C.App., 271 A.2d 561 (1970). Second, petitioner maintains that the Board based its conclusions, in part, on facts outside the record, contrary to our admonition in *Citizens Association of Georgetown, Inc. v. District of Columbia Alcoholic Bev. Cont. Bd.,* D.C.App., 288 A.2d 666 (1972). Finally, petitioner argues that the Board's conclusions are "arbitrary and capricious," *i. e.,* "without a rational basis" in the record. *Eastern Central Motor Carriers Ass'n v. United States,* 239 F.Supp. 591 (D.D.C.1965).

## III.

We disagree with petitioner's argument that it was not on notice that the "drink-and-drive" criterion would be applied. Petitioner has never challenged the Board's authority to determine "appropriateness" under § 25–115(a)6, based on the specified criteria of "character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood." By accepting this language as sufficiently precise to define "appropriateness," petitioner must be said to have accepted the possibility, indeed the likelihood, that opposition would surface—and the Board might base its decision—on the "character of the premises," with the at-

---

2. This provision is repeated in the Board's regulations, 3 DCRR § 21.7(a)(2).

3. *See, e. g.,* 3 DCRR §§ 21.2 and 21.7(a)(4) (precluding issuance of a license within 400 feet of schools, churches, and public recreation areas).

tendant problems anticipated from a combination gasoline station-liquor store in the neighborhood. The Drazins, in fact, obviously knew that this would be one of the Board's concerns, for they commissioned architectural plans and arranged separate ownership of the station and store in an acknowledged effort to minimize and hopefully eliminate such apprehension.

Petitioner, moreover, was not prejudiced by a lack of prior announcement by the Board that this specific criterion would be addressed. Testimony opposing the license on the ground of an anticipated "drink-and-drive" atmosphere was offered and received at the hearing. Petitioner had an opportunity to refute it and introduced evidence to do so, fully explaining its proposed bifurcation of the property and segregation of the two enterprises. The very purpose of the hearing—to give the petitioner as well as the Board an opportunity to hear concerns and address them—was met here as to this particular issue. Petitioner, therefore, has no basis for arguing surprise.

This case accordingly differs from *Palace Restaurant, Inc. v. Alcoholic Bev. Cont. Bd., supra,* where the Board denied issuance of a liquor license, pursuant to § 25–115(a)6, solely because the applicant did not have "a unique or unusual type of establishment." We reversed, for this criterion had not even been raised let alone discussed at the hearing; the applicant, therefore, had no opportunity to respond prior to the Board's decision.[4] In the present case, however, we hold that the language of § 25–115(a)6, coupled with the hearing itself where "drink-and-drive" was an expressed con-

cern, gave petitioner the requisite notice and opportunity to answer.[5]

## IV.

Petitioner contends next that the Board improperly took judicial notice, in effect, of facts outside the record when it based its denial of the transfer in part on the supplementary finding and conclusion that it is "well known" that gasoline purchasers, without a prior intention to do so, often buy soft drinks from a machine at a service station "merely because" of the machine's presence, and that patrons of the gas-and-go would likewise be drawn to purchase liquor at petitioner's store. It is not possible to determine out of context whether this statement amounts to judicial notice of a fact not of record or is better characterized simply as an analogy that helps explain the rational connection between the Board's findings (based on the facts of the record) and its determination that the license transfer should be denied. The Board's use of this statement, therefore, should be considered as part of the broader question whether there is substantial evidence in the record to support the Board's action. This second contention accordingly merges into petitioner's third argument: that denial of the license transfer was arbitrary and capricious, and was not supported by substantial evidence.[6]

## V.

As to the state of evidence, the Board acknowledged that its original findings and conclusions were defective. In two re-

---

**4.** In *Palace Restaurant,* the court did not reach the question whether the "unique or unusual" criterion was valid under § 25–115(a)6.

**5.** *Pollack v. Simonson,* 121 U.S.App.D.C. 362, 350 F.2d 740 (1965), is also distinguishable. There, the Board took the position that two applications for licenses at premises within 300 feet of each other were "mutually exclusive"— that only one could be granted. The court vacated that order, finding that the Board had never indicated until the time of the decision itself that this standard would be considered and deemed controlling.

**6.** Under the District of Columbia Administrative Procedure Act, D.C.Code 1977 Supp., § 1–1510(3), agency action shall be held unlawful and set aside when "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . or (E) unsupported by substantial evidence in the record of the proceedings before the court." In this case, these criteria are interchangeable in the following sense: if there is not substantial evidence in the record to support the Board's findings and conclusions, its action in denying the license transfer inevitably is arbitrary, if not capricious.

spects, the Board had been just plain wrong, namely the findings that Amoco had not yet agreed to sell the property (subject to continued sale of gasoline) or to permit the sale of liquor there. Furthermore, the Board admitted that its original findings and conclusions were "conclusory in nature" and otherwise inadequate "to permit meaningful judicial review." We note that in several respects the original findings were inadequate because they amounted to mere recitations of testimony, rather than actual findings based on the testimony and other evidence of record. *Citizens Association of Georgetown, Inc. v. Alcoholic Bev. Cont. Bd.,* D.C.App., 316 A.2d 865, 866 (1974). The question, therefore, is whether the Supplementary Findings and Conclusions have cured the previous defects.

■ A. Although we are not permitted to "substitute our judgment for that of the Board," *Schiffman v. Alcoholic Bev. Cont. Bd.,* D.C.App., 302 A.2d 235, 238 (1973), the Board's findings of fact and conclusions of law, to withstand challenge, must "be supported by and in accordance with the reliable, probative, and substantial evidence." D.C.Code 1977 Supp., § 1–1509(e). Substantial evidence is " 'more than a mere scintilla' "; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Vestry of Grace Parish v. Alcoholic Bev. Cont. Bd.,* D.C.App., 366 A.2d 1110, 1112 (1976) (citation omitted). In addition to the requisite quantum of evidence, there "must be a *demonstration* in the findings of a 'rational connection between facts found and the choice made.' " *Brewington v. Bd. of App. and Rev.,* D.C.App., 299 A.2d 145, 147 (1973) (citation omitted; emphasis in original). Thus, we must look at both the quantity of evidence and how reasonably it relates to the Board's conclusions resulting in denial of the application for transfer.

B. The original and supplementary findings of fact concentrate on three categories of evidence. They confirm that

—the liquor store and gas-and-go station would be in close proximity on property previously used solely for a gasoline service station;

—the Drazins, as the only shareholders of petitioner, would operate the liquor store while leasing the gas-and-go operation to their son and daughter, who live at home;

—members of the community have been used to pulling into that location for gasoline, including students from Cardozo High School.[7]

That each of these findings is supported by a substantial quantum of evidence is undisputed. The question, therefore, is whether the Board had demonstrated a "rational connection" between these findings and the Supplementary Conclusion that, in combination, they will create an unhealthy "drink-and-drive" atmosphere.

■ C. On the record here, we must reject the Board's finding that the "close business relationship between operators of the two businesses" will contribute to a "drink-and-drive" atmosphere. There is no evidence that the common family ownership would be manifest, with the good will of the gasoline station used to increase support of the liquor store. For example, there is apparently no intention to name the Amoco facility "Jamesons."[8] In fact, the only evidence for the Board's finding is the proverbial scintilla. When a member of the Board asked the representative of the protesting neighborhood groups whether there was "anything in the record to show that this is to be a drink and drive operation," he replied, "only by the mere fact that Mr. Jameson [sic], who owns the land that the drive is going to be on, also owns the land that the drink is going to be on." The Board member remarked:

7. These three findings are summarized at the beginning of the second paragraph of Supplementary Conclusion 2, quoted in the text, *supra,* and in the discussion, *infra.*

8. Nor did anyone testify, more particularly, that the Drazin family intended to use the gas-and-go operation in a way that expressly encouraged motorists to pick up beer or liquor while waiting for their gasoline tanks to be filled.

Well, that's not sufficient. I don't believe, to conclude just from that alone, there would be drinking and driving. There might be other evidence you can use, but that by itself I don't think you could conclude.

Absent evidence that common ownership will tend in some specified way to promote the "drink-and-drive" evil, we do not believe that this particular finding can stand. On this record, such a finding amounts to innuendo. We do not say that common ownership cannot be found under any circumstances to contribute to an unhealthy, drink-and-drive atmosphere. We do say that the Board has not adequately linked common ownership to such a conclusion here.

■ D. We are therefore left to evaluate the Board's action based on the other two principal findings: "close physical proximity of the businesses," coupled with "the undoubted identification in the minds of existing customers of the gasoline station business with the structure that would house the liquor business." We must determine whether these findings are enough, based on the record, to sustain a conclusion that drinking while driving will be encouraged.

Under the circumstances, we hold that the findings are not sufficient. First, because only three findings were utilized to reach the Board's "drink-and-drive" conclusion, and because the Board did not make clear that fewer than the three would be enough to justify that conclusion, we cannot be confident that the license would have been denied absent the common ownership factor. For this reason alone, therefore, we cannot conclude that the substantial evidence test has been met. *See Reap v. Dep't of Motor Vehicles of D. C.*, D.C. App., 305 A.2d 513, 515 (1973); *Braniff Airways, Inc. v. C. A. B.*, 126 U.S.App.D.C. 399, 412–13, 379 F.2d 453, 466–67 (1967).

Second, the other two findings cannot stand in any event. It is not clear whether

the Board's concern is directed primarily to existing customers of the gasoline service station or extends to others as well. If the narrower category of existing, *i. e.,* regular, gasoline customers is the central focus, no rationale is presented as to why familiarity with the premises as a gasoline station enhances the likelihood that customers will be attracted to the liquor store in addition to the gas-and-go facility on the other side of the lot.[9] In other words, no rational explanation is offered to support a finding that current gasoline customers, as such, would be susceptible to drinking while driving because of conversion of the premises, or that they would be more vulnerable than others to a drink-and-drive attraction.

If, on the other hand, the larger category of all prospective (including existing) gasoline customers is the Board's concern, the Board's articulated reason for anticipating a "drink-and-drive" atmosphere is limited *solely* to the finding of "close physical proximity," explained by using the analogy of the accessible soft drink machine. While we believe that this analogy provides a useful way to think about the possible relationship between the gasoline station and the liquor store—and is thus more appropriately characterized as an illustrative device for meeting the "rational connection" test than as evidence from outside the record—we do not believe that the analogy is enough to sustain a "drink-and-drive" conclusion based on proximity alone. The Board has not expressly determined that the close proximity of the two businesses—the simple fact of a liquor store next to a gasoline station—is enough in itself to render the premises inappropriate under § 25–115(a)6. Nor has the Board found and relied on other facts "of a basic or underlying nature," *Palmer v. Bd. of Zoning Adjustment,* D.C.App., 287 A.2d 535, 538 (1972), sufficient to support its conclusion. For example, the Board has not made a finding that the particular architectural renderings (including parking and landscaping) pro-

---

**9.** Conceivably, existing Amoco customers, using the new gas-and-go, would be attracted by curiosity to see how the old service station had been converted to a liquor store, but no one testified to this effect and the Board did not make such a finding.

posed for this relatively small piece of property would be likely to produce a visual combination that creates a special attraction and convenience for drivers who seek expedited access to both gasoline and alcoholic beverages.

Accordingly, because the Board's ultimate conclusion that a "drink-and-drive" atmosphere will be created is not supported by rationally connected, substantial evidence, we hold that the Board has unlawfully denied petitioner's application for transfer.

## VI.

■ We come, finally, to the remedy. Twice during the history of this litigation the Board itself has filed motions, which we have granted, remanding the proceeding to the Board—once to permit petitioner to seek reconsideration and/or rehearing, and later to permit the Board to make supplemental findings and conclusions. (Those before the court admittedly were inadequate for judicial review.) And, of course, we have now held that on the record here the Board's denial of petitioner's application was not supported by substantial evidence. The equities, therefore, are strong favoring an immediate order by the Board granting the application for transfer.

Despite the equities, however, we may not overlook the fact that the Board, not the court, is the expert body given the "right, power, and jurisdiction" over issuance, transfer, revocation, and suspension of liquor licenses. D.C.Code 1973, § 25–106. If this were a situation in which the petitioner merely sought a personal statutory benefit, then the court might not hesitate to mandate an award of a benefit unlawfully withheld. See D.C.Code 1977 Supp., § 1–1510(2); Hill v. District Unemp. Comp. Bd., D.C.App., 302 A.2d 226 (1973); Simmons v. District Unemp. Comp. Bd., D.C. App., 292 A.2d 797 (1972). The petitioner here, however, is seeking a license—an application process not only requiring exercise of the Board's expert judgment for protection of the public, but also clothing every licensee with its own public responsibility,

to be monitored by the Board. Much is at stake for the public, as well as for the prospective licensee.

The Board's function here, therefore, is that of an expert regulatory agency. One of the most complex questions a court can entertain in the field of administrative law is the question whether the court, in proposing particular relief, may improperly be contemplating the exercise of a *nonjudicial* function. That is to say, there can be a serious issue of intrusion upon the expert, administrative prerogatives of a governmental agency by ordering the specific, affirmative relief requested (*e. g.,* transfer of a liquor license), rather than merely setting aside the agency's action and remanding for further proceedings consistent with the court's legal determination. See 4 K. Davis, Administrative Law Treatise § 29.10 (1958). The courts traditionally have been wary of preempting the agency's function—a function which the court is not qualified, let alone authorized, to exercise. See *Pan-Atlantic Steamship Corp. v. Atlantic Coast Line R. R. Co.,* 353 U.S. 436, 440, 77 S.Ct. 999, 1 L.Ed.2d 963 (1957); *FPC v. Idaho Power Co.,* 344 U.S. 17, 20–21, 73 S.Ct. 85, 97 L.Ed. 15 (1952); *United States v. Carolina Carriers Corp.,* 315 U.S. 475, 489–90, 62 S.Ct. 722, 86 L.Ed. 971 (1942); *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 141–46, 60 S.Ct. 437, 84 L.Ed. 656 (1940); *McBride v. Smith,* 405 F.2d 1057 (2d Cir. 1968); *Watkins Motor Lines, Inc. v. United States,* 243 F.Supp. 436, 438 n. 4 (D.Neb.1965).

At least as to courts created pursuant to Article III of the Constitution of the United States, the issue is centered not merely on the desirability of judicial deference to more expert bodies but on the constitutional separation of powers itself. See *FCC v. Pottsville Broadcasting Co., supra.* Thus, as an Article I court, D.C.Code 1973, § 11–101(2)(A), our own relation to these precedents is all the more complex because of the possibility that Article I courts in the District of Columbia can receive delegations of administrative as well as judicial functions. See *Palmore v. United States,* 411

U.S. 389, 413, 416, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973) (Douglas. J., dissenting); *O'Donoghue v. United States*, 289 U.S. 516, 546, 53 S.Ct. 740, 77 L.Ed. 1356 (1933).[10]

With all this said, we hasten to add that there may come a point when an agency's action, such as the Board's denial of a liquor license, can evidence such arbitrary and capricious conduct that a court order mandating substantive agency action—in this case issuance of the license—will become necessary and appropriate, despite intrusion into the agency's domain. *See Clore Restaurant v. Payne*, 72 F.Supp. 677 (D.D.C.1947) (court ordered ABC Board in mandamus proceeding to issue liquor license which had been arbitrarily and capriciously denied).[11] Arguably, this case has reached that point, although unless absolutely necessary we prefer not to engage in the complex analysis required to resolve that question, involving the respective prerogatives of this court and the Board.

Accordingly, we set aside the Board's order denying petitioner's application; and we order the Board to show cause in this court, within ten days, why petitioner's application for transfer of its Class "A" liquor license should not be granted forthwith upon compliance with all remaining requirements, if any, not involved in this litigation. Absent such a timely showing we shall assume that the Board will grant petitioner's application without further order of this court.

*So Ordered.*

---

10. In this connection, the highest courts of some states have held that the court system cannot constitutionally assume responsibility either for initial issuance of a license, *e. g., Cromwell v. Jackson*, 188 Md. 8, 52 A.2d 79 (1947) (liquor license), or for grant or denial of a license after trial *de novo* review of agency action. *E. g., Chemical Bank & Trust Co. v. Falkner*, 369 S.W.2d 427 (Tex.1963) (certificate of authority to operate bank); *Household Finance Corp. v. State*, 40 Wash.2d 451, 244 P.2d 260 (1952) (en banc) (small loan company license). *Contra, Odle v. McCormack*, 185 Tenn. 439, 206 S.W.2d 416 (1947) (insurance license). Other state supreme courts have upheld statutes purporting to give the courts *de novo* review over a local agency's grant or denial of a license by narrowly construing the statutes to grant no more than "substantial evidence" review. *E. g., State Bd. of Medical Reg. and Exam. v. Scherer*, 221 Ind. 92, 96–97, 46 N.E.2d 602, 603–04 (1943). Still others have permitted lower courts, at the behest of the legislature, to undertake administrative functions, with judicial review of their actions limited to the "substantial evidence" test. *E. g., Jones v. Marsh*, 148 Tex. 362, 224 S.W.2d 198 (1949) (liquor license).

11. Evaluation of the appropriateness of mandatory relief would begin by construing our authority under the District of Columbia Administrative Procedure Act, D.C.Code 1977 Supp., § 1–1510, which provides in part:

> Upon the filing of a petition for review, the court shall have jurisdiction of the proceeding, and shall have power to affirm, modify, or set aside the order or decision complained of, in whole or in part, and, if need be, to remand the case for further proceedings, as justice may require.

In addition, § 1–1510(2) authorizes the court, unless limited by other applicable statutory law, "to compel agency action unlawfully withheld or unreasonably delayed."

Also to be considered would be our ancillary jurisdiction to issue writs of mandamus pursuant to 28 U.S.C. § 1651(a) (1970): "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See* 3 K. Davis, Administrative Law Treatise § 23.10 (1958).