**HILTON HOTELS CORPORATION, t/a The Capital Hilton, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

**No. 80–267.**

District of Columbia Court of Appeals.

Argued April 16, 1981.

Decided Sept. 16, 1981.

appellees' counsel agreed that he did not know what definition the trial court had employed.

Whayne S. Quin, Washington, D.C., with whom Norman M. Glasgow, Allen Jones, Jr., Norman M. Glasgow, Jr., and Carolyn H. Hamm, Washington, D.C., were on the briefs, for petitioners.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before KELLY, FERREN and PRYOR, Associate Judges.

PRYOR, Associate Judge:

This is an appeal from an order dated November 15, 1979 rendered by the Board of Zoning Adjustment (the BZA or the Board) wherein it concluded that it was not estopped from reversing a decision of the Zoning Administrator. This is the second appeal to this court involving these parties.

On December 19, 1970, the Board reversed a decision made 11 months earlier by the Zoning Administrator allowing the Statler Hilton Hotel to operate a laundry which served that hotel and the Washington Hilton. Petitioners own both hotels. The Zoning Regulations permit a hotel in a S.P., Special Purpose, Zoning District "to operate a laundry on its premises since the laundry constitutes an 'accessory use' of the hotel property as that term is defined, *viz.*, 'use customarily incidental and subordinate to the principal use and *located on the same lot therewith.*' (Emphasis added.)" *Hilton Hotels Corporation v. District of Columbia Board of Zoning Adjustment*, D.C.App., 363 A.2d 670, 671 (1976) (*Hilton I*). However, the BZA concluded, and this court affirmed, that "the laundry on the premises of the Statler Hilton does not constitute 'an accessory use' insofar as the Washington Hilton Hotel is concerned since obviously the laundry is not on that hotel's lot, and hence the current use of the Statler Hilton's laundry plant for the Washington Hilton is improper under the Zoning Regulations." *Id.* (footnote omitted).

Upon consideration of a petition for reconsideration or rehearing, this court remanded the case to the BZA to determine

whether it is estopped from reversing the Zoning Administrator's ruling of January 12, 1970, in light of the expenditures by petitioners on renovations and modernization of equipment pursuant to permits issued prior to January 12, 1970, by the District of Columbia and the past practice going back to 1955 of one hotel doing laundry for another hotel.

It is the denial of relief in this regard which has prompted the appeal before us. Petitioners urge that the Board's refusal to invoke the remedy of estoppel is contrary to the evidence and therefore arbitrary and capricious. Additionally, they maintain that the Board committed error in refusing to consider the applicability of laches. We disagree and, accordingly, affirm.

## I

As a result of the remand from this court, the BZA scheduled a further hearing and asked petitioners to introduce into evidence:

(1) Any permits upon which it relies and copies of applications it submitted to obtain those permits;

(2) Documentary evidence of expenditures it asserts were made in reliance upon permits issued;

(3) Documentary or other evidence that District of Columbia officials had knowledge that, in reliance upon permits issued prior to January 12, 1970, the use of the laundry would be expanded to include laundry of the Washington Hilton Hotel; and

(4) Documentary or other evidence that District of Columbia officials knew of and approved a past practice going back to 1955 for the Statler Hilton Hotel doing laundry for another hotel and that such a past practice actually existed.

At the July 26, 1978 hearing, petitioners demonstrated that they had sought and received permits authorizing: a sidewalk opening large enough to allow pieces of machinery to be delivered to an expanded laundry facility; removal of a vault roof and replacement with a precast roof; installation of a gas dryer; connection of additional washers, tumblers and dryers; repair of the sidewalk adjacent to the vault; and lastly, installation of a 600 ampere meter. Documentary evidence was presented of expenditures made in reliance on these permits; approximately $152,000 was spent between December 1969 and June 1970, when the Board initially dismissed the action, and an additional $30,000 from June 1970 until December 1970, when the Board reversed the decision of the Zoning Administrator which had allowed the consolidated facilities.[1]

In an effort to establish that District of Columbia officials had knowledge of the consolidation allegedly contemplated by the permits, petitioners presented testimony of Richard Nelson, General Manager of the Statler Hilton from 1969–1972, that District inspectors were around the hotel during the renovation. P.L. Haislip, an electrical contractor, testified that he told an inspector that the purpose of the remodeling was to enable the Statler Hilton to meet the laundry needs of the Washington Hilton. There was, however, conflicting testimony by H. Warren Stewart, former Zoning Administrator. At the remand hearing he suggested that he had been aware, while the remodeling was in progress, that the two hotels used one laundry. Yet his testimony some years earlier, offered as an exhibit at the second hearing, indicated that he became aware of the shared facility only after a complaint to the BZA.

On the question of past practices approved by the District, particular reliance was placed upon the statement of H. Warren Stewart that it was the common practice of hotels in joint ownership to pool certain facilities. Mr. Gleason Wilson, an

1. It is noted that the June 1970 action of the Board was not an affirmance of the Zoning Administrator but was, rather, a dismissal based entirely on a mistake of fact with regard to standing, *Hilton I* at 672–73. After the mistake was corrected, there was a reversal on the merits in December 1970.

inspector with the Zoning Division in 1969, testified that at one time the Sheraton Park did laundry for the Sheraton Carlton. Richard Nelson·and Herbert Blunck, both former General Managers of the Statler Hilton, testified regarding the practice of consolidated facilities in other cities as well as the District of Columbia, and that District of Columbia officials were aware of the practice and could infer it from various markings on hotel linen.

## II

■ In reviewing this matter, our role is to assure that the conclusions drawn by the Board follow as a matter of law from its findings. If so, the Board must be upheld even though we might have reached a different result had we considered the matter de novo. *See Stewart v. District of Columbia Board of Zoning Adjustment,* D.C.App., 305 A.2d 516 (1973), as cited in *Hilton I.*[2]

■ Turning to the precise question at hand, we have said that in order to establish a defense of equitable estoppel, one must prove: (1) actions taken by petitioner in good faith, (2) some affirmative response by the District, (3) that petitioner made expensive and permanent improvements in reliance, and (4) that the equities are strongly in petitioner's favor. *Goto v. District of Columbia Board of Zoning Adjustment,* D.C.App., 423 A.2d 917, 925 n.15 (1980), citing *Wieck v. District of Columbia Board of Zoning Adjustment,* D.C.App., 383 A.2d 7 (1978); *District of Columbia v. Cahill,* 60 App.D.C. 342, 343, 54 F.2d 453, 454 (1931). In addition, any reliance must be justifiable, *Wieck, supra* at 11 citing *Nathanson v. District of Columbia Board of Zoning Adjustment,* D.C.App., 289 A.2d 881, 884 (1972). Looking at the record as a whole, a reasonable person might well find the following as adequate support for the Board's conclusion that it should not be estopped on the basis of the various permits

issued by the District of Columbia: the Washington Hilton is not mentioned in any of the permits or applications for permits; officials could not determine from the permits or supporting documents that the work being authorized was for an expansion of the Statler Hilton laundry to service the Washington Hilton; the proposed expanded use of the facilities was not disclosed to officials who issued the permits nor were inspectors informed directly; it was not reasonable to expect District of Columbia officials to make an inference of such an expanded use from different linen markings, the presence of separate meters, and larger machinery viewed on-site.

■ While petitioners presented some evidence that there was a past practice of consolidated laundry facilities, that some District of Columbia officials were aware of it, and that petitioners so relied, the testimony in this regard was sometimes inconsistent and based on varying degrees of inference. In considering this testimony, the Board is entrusted with a degree of latitude in deciding how it shall evaluate and credit the evidence. It could reasonably reject some of the evidence offered. *See Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission,* D.C.App., 402 A.2d 36, 44 (1979); *Kenmore Joint Venture v. Board of Zoning Adjustment,* D.C.App., 391 A.2d 269, 276 (1978).

■ However, even accepting that petitioners established the existence of a past practice and reliance, the record fails to disclose any affirmative act by District officials which could satisfy the requirements of estoppel. Certainly the alleged awareness by a building inspector of a shared laundry facility cannot be imputed to a zoning official nor can that awareness be equated with allowing a variance to an existing zoning regulation. Similarly, the failure to close the shared facility cannot be equated with sanctioning the plan. "A fail-

---

**2.** The findings must be supported by substantial evidence: "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jameson's Liquors, Inc.* *v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 384 A.2d 412, 418 (1978) (citations omitted).

ure to act is not equivalent to an affirmative act. Moreover, inaction ordinarily is not sufficient to raise an estoppel." *Wieck, supra* at 11 (citations omitted).

Thus, we conclude that the Board's ruling that no estoppel had been proven was not error.

### III

 Lastly, we are of the view that the Board, upon remand, did not commit error by refusing to consider the applicability of laches. This equitable doctrine may be invoked to bar a claim if there is an unreasonable delay in asserting that claim with resulting prejudice to the opposing party. While the remand order instructed the BZA to determine whether it was equitably estopped from reversing the Zoning Administrator's decision, petitioners argued that because "[l]aches is a species of estoppel," *Wieck, supra*, the Board should have considered their laches argument as part of the estoppel defense.

We disagree. Although laches may be akin to estoppel, it is analytically distinct. *See id.; Goto, supra* at 925 n.15. Petitioners did not argue laches in their initial petition to this court, *see Hilton I, supra*, nor in their petition for reconsideration or rehearing, or in the alternative for rehearing en banc of *Hilton I*, which led to this second review of the case. Thus, there was no basis for the Board, upon remand, to consider laches and there is no way we properly can consider it now.[3]

*Affirmed.*

---

[3]. We note that, giving emphasis to the strong public interest in the integrity and enforcement of zoning regulations, this court has held that except in limited circumstances neither laches nor estoppel is judicially favored in this narrow area of administrative adjudication, *Goto, supra*, and *Wieck, supra*. In *Goto* this court held an appeal to the BZA barred by laches when the petitioners waited nine months to assert their claim, during which time they had demonstrated knowledge of their rights and an opportunity promptly to assert them. Laches barred the claim since after losing an initial complaint, they delayed unreasonably in bringing their appeal to the Board to Goto's prejudice. In *Wieck*, the laches defense was upheld where the defense centered on the "longlasting failure of the proper [zoning] officials to enforce their previous orders and the consequent prejudice to petitioner from their present attempted enforcement." *Id.* at 11.