**NATIONAL CATHEDRAL NEIGHBORHOOD ASSOCIATION, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

**Protestant Episcopal Cathedral Foundation, Intervenors.**

**No. 99–AA–1230.**

District of Columbia Court of Appeals.

Argued May 2, 2000.
Decided May 10, 2000 *.

---

* This appeal was originally decided by an unpublished Memorandum Opinion and Judgment. The opinion is now being published at the direction of the court.

Thomas E. Dernoga, with whom Alan Gourley, Washington, DC, was on the brief, for petitioners.

Whayne S. Quin, with whom Paul J. Kiernan and Sarah E. Shaw, Washington, DC, were on the brief, for intervenors.

Robert R. Rigsby, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before FARRELL and REID, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM:

Petitioners seek reversal of a decision of the Board of Zoning Adjustment (BZA or the Board) granting intervenors' application for a special exception permitting construction of a new athletic facility for the use of the National Cathedral School (the School). Petitioners make an array of arguments, including that the BZA erroneously found the proposed facility to be either (a) an extension of the principal use or (b) an accessory use of the School, failed to consider the cumulative impact not just of the sports facility but of all the uses of intervenors' property—including the new facility—on the surrounding neighborhood, and failed to reconcile the proposed construction with the requirements of the Comprehensive Plan. Finding none of these arguments a sufficient basis for reversal of the BZA's decision, we affirm.

 Petitioners acknowledge both the BZA's limited role with respect to the grant or denial of a special exception[1] and this court's limited role in reviewing the Board's decision.[2] The BZA found that the proposed facility met the requirements of a special exception. *See Citizens Coalition v. District of Columbia Bd. of Zoning Adjustment*, 619 A.2d 940, 947–48 (D.C. 1993). Specifically, the BZA found that the facility constitutes either an extension of the principal use of the school or an "accessory use." Because the Board's finding that it is an accessory use is sustainable, we need not consider whether the facility is reasonably characterized as an extension of the principle use. Petitioners argue that because of the size and mass of the proposed structure it cannot reasonably be termed "incidental to and subordinate to the principle use," 11 DCMR § 199 (defining "accessory use"). We disagree. Functionally there is no question that athletic facilities, and the buildings housing them, are an adjunct to the educational mission of a school. *Cf.* 11 DCMR § 199 (defining "public school"). Nor does anything in the regulation imply that a facility loses that character when it reaches a certain size. In any case, the BZA made no finding that the proposed structure is too large for its intended purposes. The Board found that only 4,360 of the total 83,160 square feet comprising the structure would be built above ground, and that the height of the building is well within the regulatory limit. *See* 11 DCMR § 400.1. Nothing in the size or mass required the Board to conclude that use of the proposed structure could not be considered accessory.[3]

---

1. In evaluating requests for special exceptions, the Board "is limited to a determination whether the exception sought meets the requirements" of the particular regulation on which the application is based. The applicant has the burden of showing that the proposal complies with the regulation; but once that showing has been made, "the Board ordinarily must grant [the] application."
*French v. District of Columbia Bd. of Zoning Adjustment*, 658 A.2d 1023, 1032–33 (D.C. 1995) (citations omitted).

2. "We must uphold decisions made by the BZA if they rationally flow from findings of fact supported by substantial evidence in the record as a whole." *Draude v. District of Columbia Bd. of Zoning Adjustment*, 582 A.2d

949, 953 (D.C.1990) (citations omitted). That is so "even though we might have reached another result." *Stewart v. District of Columbia Bd. of Zoning Adjustment*, 305 A.2d 516, 518 (D.C.1973).

3. The BZA could also properly find that the building met the "same lot" test for an accessory use. *See* 11 DCMR § 199. In contrast to the separate locations involved in *Hilton Hotels Corp. v. District of Columbia Bd. of Zoning Adjustment*, 363 A.2d 670 (D.C.1976), here the Upper School is located on the same lot as the proposed facility, and the Lower and Middle Schools are situated directly across the street.

■ This court has also stated that "'the degree of impact upon the surrounding residential neighborhood is the most reasonable test of the appropriateness of an accessory use.'" *Citizens Coalition,* 619 A.2d at 952 (citation omitted). The BZA found that the proposed facility, to be built largely underground, has been designed to "minimize noise and visual exposure," and specifically that "the height of the wall and athletic facility will not have adverse impacts on properties to the north, across Woodley Road, while open space at the location ... will be in harmony with such properties." Although petitioners dispute these findings, we are unable to say that they lack substantial support in the record.[4] The BZA expressly made its approval contingent on intervenors' compliance with written usage agreements between intervenors, the ANC, and the Cleveland Park Citizens Association (CPCA) designed "to address the issues of noise, traffic, the visual impact of the facility, and construction."

Nor are we persuaded by petitioners' argument that the BZA viewed the proposed construction in artificial isolation, without considering the cumulative impact of (for example) traffic generated by the National Cathedral site overall. Assuming that the Board was required to take into account existing deficiencies in parking availability on the site, it nevertheless could fairly conclude—as it did—that the proposed facility would not add to the effects of that shortage.[5] A project otherwise justified could not be held hostage, as it were, to existing traffic problems caused by the attraction of the Cathedral site generally.

Finally, although the BZA is required to "look to the District elements [of the Comprehensive Plan] for general policy guidance" in passing upon applications, 10 DCMR § 112, nothing in those elements is inconsistent with the Board's reasoned approval of the proposed facility. The National Cathedral is, indeed, to "be protected from nearby dense development that would despoil its setting." 10 DCMR § 1400.2(c)(2). Testimony before the BZA permitted it fairly to conclude that the design of the predominantly underground facility will further the goal of maximizing the amount of open space on the Cathedral site.

We have considered petitioner's remaining arguments and reject them as well.

*Affirmed.*

---

4. The Board found, for example, that the proposed height of the wall had been reduced to address concerns of ANC3C. The Board also found that there would be sizeable set backs on three sides of the structure. Evidence further allowed a finding that, while on the fourth (or Woodley Road) side the set back would be much shorter, a berm and landscaping would serve as a visual buffer.

5. The Board found that the proposed construction would add 53 parking spaces to the 85 already on the site, and that existing traffic patterns were to be altered "to alleviate present and future traffic congestion." The agreements with the ANC and the CPCA were likewise intended to achieve partial amelioration of traffic problems.

From our repeated references to the ANC agreement, it goes without saying, that we reject petitioners' argument that the Board failed to give "great weight" to the ANC's recommendations. Subject to compliance with the agreements, the ANC in fact approved construction of the facility, as had the Office of Planning.